IN RE ESTATE OF ERWIN STAHN.
REKA STAHN v. GERTRUDE STAHN.[1]

July 20, 1934.

No. 29,907.

[1]Reported in 256 N. W. 137.

*C. M. Gislason* and *Johnson & Hoel,* for appellant.
*Hall & Catlin,* for respondent.

*HILTON, Justice.*

Defendant appeals from an order of the district court setting aside a verdict in her favor and ordering judgment for plaintiff in the sum of $2,444.28, with interest, costs, and disbursements. (The parties are hereinafter referred to as above.)

Plaintiff is the executrix of the estate of her deceased husband, Robert Stahn. Defendant is the administratrix of the estate of her deceased husband, Erwin Stahn, son of plaintiff and Robert Stahn. The controversy is over sums of money claimed by plaintiff to have been advanced by Robert Stahn as loans to their son, Erwin. Defendant in her answer asserted that these sums were gifts, with no intention on the part of either father or son that the money should be returned, or, if there was such intention, that the indebtedness had later been forgiven. At the close of the evidence each party moved for a directed verdict. The court, for its own convenience, in case the jury found for defendant, asked that it answer the following special question:

"What was the value of all the property and money delivered by the father to the son between the dates claimed?"

The jury found the value of such property and money to be $2,444.28. That amount was adopted by the court as correct, and is not questioned by either party hereto.

The general rule is that, in the absence of fraud or undue influence, a voluntary payment by a parent to a child, unexplained, will be presumed to be a gift. Jennings v. Rohde, 99 Minn. 335, 109 N. W. 597; Olivia v. Fernandez (C. C. A.) 68 F. (2d) 338; 28 C. J. p. 672, § 74. The presumption may be overcome by proof that the intention of the parent was not to make an absolute gift, as by declarations or acts of the parties inconsistent with the idea that a gift was intended. 46 C. J. p. 1321.

The pivotal question before us is whether, on the record, the court was justified in holding, against the verdict of the jury, that the plaintiff had succeeded in rebutting the presumption and had established that the moneys delivered by the father to his son were loans.

Erwin was the only child of plaintiff and Robert Stahn. The latter had two sons by a former marriage. Erwin and defendant were married in February, 1929, at which time his parents gave him a deed to a quarter section of land, in which the elder Stahns reserved a life estate in the form of an annuity of $400, to be paid January 1 of each year. The two families had and clearly evidenced a cordial and devoted feeling toward each other. Shortly after their marriage Erwin and defendant moved onto the land so conveyed and resided thereon until the former's death on April 14, 1932. On February 5, 1932, the parents executed a quitclaim deed to the farm, releasing and waiving the reservation above referred to so that Erwin became the absolute owner thereof. The moneys here involved were advanced to Erwin during the first year of his marriage and were used in purchasing horses, farm machinery, and other necessary farm equipment. After Erwin's death a sale was had, and defendant sold the items so purchased.

Robert Stahn filed a claim in probate court against his son's estate for the sums claimed to have been advanced by him. These

items totaled more than the amount found by the jury in answer to the special question. Robert Stahn died September 22, 1932, and his claim was thereafter prosecuted by plaintiff as executrix of his estate. The probate court disallowed the claim, and an appeal was taken to the district court, where trial was had to a jury with the outcome as hereinbefore stated.

The court in its memorandum among other things stated:

"It was after much hesitation that the case was submitted to the jury by the court. Counsel was advised prior thereto that the court's view of the evidence was such that a directed verdict for the claimant seemed warranted. However, in order to grant the court full time to check over respondent's [defendant's] authorities, and on request of her attorney, the case was submitted.

"After due deliberation of all matters now before us, I feel that the evidence contains nothing for action by the jury."

The evidence is clear that Robert Stahn did not at the time of advancing the money intend *all* such advancements to be absolute gifts. The later formal relinquishment of the annuity so shows. The evidence, we think, requires a like conclusion as to the other advancements.

Two memorandum books were received in evidence, one belonging to Robert Stahn and retained in his possession; the other belonging to Erwin and kept by him. A page in the father's book was headed "Erwin R. Stahn" and contained the items in question. Erwin's book contained entries totaling the same amount. Both plaintiff and defendant testified that the entries in both books represented amounts received by Erwin from his father; that Erwin made all of the entries in his own book and most of those in that of his father. Defendant admitted that her husband put the entries in the two books to keep track of the money he got from his father. Checks, corresponding in amounts to entries made in the books, drawn by the father, were received in evidence. Some of them were payable to Erwin and by him indorsed; others were payable to persons from whom purchases had been made. In both books, in the handwriting of Erwin, this notation appears: "Intr. paid up to

March first, 1930." Plaintiff testified, and defendant conceded, that such entry was made at a time when the elder Stahns offered to "throw off the interest for this year." That testimony and other evidence, together with the interest entry in the books, clearly rebuts the presumption that the advancements were made with the intention of making gifts to the son.

Further in its memorandum the court stated, and, we think, correctly:

"The respondent's [defendant's] own testimony as to interest paid to March 1, 1930, together with her husband's written statement in his father's record, too strongly substantiates the records themselves and entirely rebuts any claim of gift.

"The inventory of the father's estate shows he had very little of this world's property for the declining years of himself and his wife. They had given the farm intact. They had given an agreed rental that farm should yield during their lives. It is hardly within the realm of fair reason that they also would give whatever else they had to the son, with so little left for their old age."

Plaintiff having rebutted the presumption, the burden was then upon defendant to adduce evidence establishing her claim of gifts. The only showing made in that regard is that Robert Stahn did not in his returns to the assessor for the years 1930, 1931, and 1932 list the amounts involved as subject to moneys and credits tax, and that plaintiff did not list said amounts in the inventory she filed in her husband's estate. Such facts, although perhaps of some corroborative value, are not sufficient, standing alone, to establish defendant's claim, and the court was justified in holding that there was no intention shown that the father delivered the money to his son as gifts.

The court correctly held that there was no evidence warranting a finding that there was a forgiveness of these debts. Evidence introduced for that purpose consisted of the testimony of the defendant (denied by plaintiff) relative to a letter written by plaintiff to Erwin and defendant shortly after the giving of the quitclaim deed wherein, according to defendant, plaintiff stated that "if any-

body asks you what you owe your folks tell them that you don't owe them a cent." The letter was not produced, defendant stating that she and Erwin destroyed it pursuant to a request contained in the letter. The letter was signed "Mother and Dad," but there is no evidence that the father had any knowledge of the claimed contents. Manifestly forgiveness of the debt was not shown.

We have carefully examined all the points raised by defendant and cases cited. We find no ground for reversal.

Affirmed.